ERIC GRANT
United States Attorney
MICHAEL D. ANDERSON
KATHERINE T. LYDON
MATTHEW THUESEN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

ALEXANDRE DEMPSEY
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1301 New York Avenue, NW
Washington, D.C. 20530

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:25-CR-0258 TLN |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: MAY 14, 2026 |
| DANA WILLIAMSON, | TIME: 9:30 A.M. |
| Defendant. | COURT: Hon. TROY L. NUNLEY |

## I.    **INTRODUCTION**

### A.    **Scope of Agreement.**

The Indictment in this case charges the defendant with violations of Conspiracy to Commit Bank Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One); Bank Fraud, in violation of 18 U.S.C. § 1344 (Counts Two through Twelve); Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts Thirteen through Eighteen); Conspiracy to Interfere with Governmental Function and Obstruct Justice, in violation of 18 U.S.C. § 371 (Count Nineteen); Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1) (Counts Twenty to Twenty-two); and Making False Statements, in violation of 18 U.S.C. § 1001 (Count Twenty-Three). This document contains the complete plea agreement between

the United States Attorney's Office for the Eastern District of California and the Public Integrity Section, Criminal Division, United States Department of Justice (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and the Public Integrity Section, Criminal Division, United States Department of Justice and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.    Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant, including activities which may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.    DEFENDANT'S OBLIGATIONS

**A.    Guilty Plea.**

The defendant will plead guilty to Count 1--Conspiracy to Commit Bank Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349; Count 22-- Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1); and Count 23--Making False Statements, in violation of 18 U.S.C. § 1001. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her pleas should the Court not follow the government's sentencing recommendations.

PLEA AGREEMENT-DANA WILLIAMSON                    2

The defendant agrees that the statements made by her in signing this agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

**B.      Timing of Entry of Plea and Sentencing.**

The defendant agrees to enter a guilty plea pursuant to this plea agreement at the first available court date. The parties further agree to request that the Court set a Status of Sentencing hearing for the first available court date eight weeks after the entry of plea. At its sole discretion, the government may require the defendant to set a sentencing hearing at the first available date, calculated using a standard PSR preparation schedule, following the Status of Sentencing hearing or the date of the government's request to defense counsel, whichever is later.

If the defendant fails to enter a guilty plea or proceed to sentencing pursuant to this plea agreement within the period specified, the plea agreement shall be voidable at the option of the government and the government will not be bound by this agreement or any of its representations, including, but not limited to, those regarding forfeiture, restitution, and charging.

**C.      Restitution.**

1.      Conduit Scheme Restitution

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees the conduct to which she is pleading guilty in Count 1 requires mandatory restitution pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii), and agrees to pay restitution to the victim for the total loss to the victim as a result of the scheme in an amount of $225,000. Restitution shall be joint and several with any other co-conspirators for whom restitution is ordered for the same offense.

2.      Tax Scheme Restitution

The defendant also agrees, pursuant to 18 U.S.C. § 3663(a)(3), to pay full restitution to the Internal Revenue Service (IRS) in the amount of $504,523. Any restitution paid to the IRS shall be

credited by the IRS against any amount which the defendant owes the IRS, in accordance with standard IRS procedure.

The defendant understands that this agreement does not relieve the defendant from any legal obligation to pay additional amounts due and owing to the IRS. The defendant understands that nothing in this agreement restricts the United States or the IRS from initiating any collection or civil enforcement action relating thereto, nor does this agreement bar the defendant from civilly contesting any liabilities determined by the IRS, or bar the defendant from exercising her rights in collection proceedings as provided by the Internal Revenue code and standard IRS procedure. The defendant understands that the factual basis of this plea agreement binds only the United States Attorney's Office for the Eastern District of California in this criminal case, and does not bind any agency of the United States in any other judicial, administrative, or other proceeding.

3.    Restitution Payments

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

The defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means. The defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

The defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of her assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

D.    **Fine.**

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to

PLEA AGREEMENT-DANA WILLIAMSON                4

affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

**E.    Special Assessment.**

The defendant agrees to pay a special assessment of $100 for each count to which she is pleading guilty at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing.

**F.    Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 U.S.C. § 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right: (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and

PLEA AGREEMENT-DANA WILLIAMSON    5

defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### G.   Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.F above.

The defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. The defendant also

PLEA AGREEMENT-DANA WILLIAMSON          6

authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III.   THE GOVERNMENT'S OBLIGATIONS

**A.   Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment.  The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.FB (Timing of Entry of Plea and Sentencing), 11.F (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Agreements regarding Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.   Recommendations.**

1.   Incarceration Range.

The government will recommend that the defendant be sentenced within the applicable guideline range as determined by the Court.

2.   Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.   Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this plea agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

PLEA AGREEMENT-DANA WILLIAMSON                    7

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

A.    **Count 1--Conspiracy to Commit Bank Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349.**

First, beginning in or about February 2022, and ending in or about September 2024, there was an agreement between two or more persons to commit at least one crime, i.e., Bank Fraud or Wire Fraud, as charged in the Indictment; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it;

With respect to the first object of the conspiracy, the elements for Bank Fraud are as follows:

First, the defendant knowingly carried out a scheme or plan to obtain money or property from the financial institution, i.e., Bank 1, by means of false or fraudulent pretenses, representations, or promises or omitted facts;

Second, the defendant knew that the statements or promises were false;

Third, the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, Bank 1 to part with money or property;

Fourth, the defendant acted with the intent to defraud; and

Fifth, Bank 1 was a financial institution.

With respect to the second object of the conspiracy, the elements for Wire Fraud are as follows:

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises or omitted facts.  Deceitful statements or half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and

PLEA AGREEMENT-DANA WILLIAMSON                8

cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**B.**     **Count 22-- Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1).**

First, the defendant signed and filed a tax return for the year 2023 that she knew contained false and incorrect information as to a material matter;

Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

Third, in filing the false tax return, the defendant acted willfully.

A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.

**C.**     **Count 23--Making False Statements, in violation of 18 U.S.C. § 1001.**

First, the defendant made a false statement;

Second, the statement was made in a matter within the jurisdiction of the Federal Bureau of Investigation;

Third, the defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that her conduct was unlawful; and

Fourth, the statement was material to the activities or decisions of the FBI; that is, it had a natural tendency to influence, or was capable of influencing, the FBI's decisions or activities.

**D.**     **Defendant Understands Elements of the Offense.**

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

**V.     MAXIMUM SENTENCE**

**A.     Maximum Penalty.**

The maximum sentence that the Court can impose is:

As to Count 1: 30 years of incarceration, a fine of $1,000,000, a 5 year period of supervised release and a special assessment of $100.

PLEA AGREEMENT-DANA WILLIAMSON                    9

As to Count 22:  3 years of incarceration, a fine of $100,000, a 1 year period of supervised release and a special assessment of $100.

As to Count 23:  5 years of incarceration, a fine of $250,000, a 3 year period of supervised release and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which she is pleading guilty.  The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.      Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years imprisonment.

## VI.      SENTENCING DETERMINATION

**A.      Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take it into account when determining a final sentence.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.      Agreements Regarding Guideline Calculation.**

1.      Stipulations Affecting Guideline Calculation:

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and that each variable is adequately supported by facts in the discovery in the case that will be made available to U.S. Probation for preparation of the Pretrial Sentencing Report, and therefore stipulate to the following:

PLEA AGREEMENT-DANA WILLIAMSON                10

As to **Count 1 (Conduit Scheme)**:

| Offense Conduct or Characteristic | Guidelines Section | Offense Level Adjustment |
|---|---|---|
| Base offense level | 2B1.1(a)(1) | 7 |
| Loss Amount | 2B1.1(b)(1)(F) | 10 ($225,000 loss) |
| Leadership | 3B1.1 | 3 (the scheme involved five or more participants and the defendant managed or supervised at least one other participant—Co-Conspirator 2) |
| Abuse of Position of Trust | 3B1.3 | 2 (position of private trust) |

As to **Count 22 (Tax Scheme)**:

| Offense Conduct or Characteristic | Guidelines Section | Offense Level Adjustment |
|---|---|---|
| Base offense level | 2T1.1(a)(1) and 2T4.1 | 18 ($504,523 tax loss with stipulated relevant conduct from counts 20 and 21) |

As to **Count 23 (False Statements)**:

| Offense Conduct or Characteristic | Guidelines Section | Offense Level Adjustment |
|---|---|---|
| Base offense level | 2J1.1(a) | 14 |

2.      Acceptance of Responsibility:

See paragraph III.B.2 above.

3.      Criminal History:

The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.

4.      Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for an adjustment based on any post-plea obstruction of justice (§3C1.1).

5.      Defendant's Sentencing Recommendation:

The defendant reserves the right to recommend to the Court that she be sentenced to whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a).  This includes reserving the right to argue for a sentence below the advisory guidelines range, a sentence of no incarceration, or a sentence of home detention.

PLEA AGREEMENT-DANA WILLIAMSON                    11

6.    Government's Sentencing Recommendation:

The government will recommend a sentence consistent with Part III.B.1 of this plea agreement.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B.    Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence.  The defendant agrees as part of her plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

PLEA AGREEMENT-DANA WILLIAMSON                    12

aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea(s), dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.F herein.

### C.    Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

### IX.    APPROVALS AND SIGNATURES

#### A.    Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: May 11, 2026



MCGREGOR SCOTT
Attorney for Defendant

#### B.    Defendant.

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully

PLEA AGREEMENT-DANA WILLIAMSON                    13

understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: May 11, 2026

_Dana Williamson_
DANA WILLIAMSON
Defendant

C.    **Attorneys for the United States.**

I accept and agree to this plea agreement on behalf of the government.

Dated: May 13, 2026

ERIC GRANT
United States Attorney

_M. Anderson_
MICHAEL D. ANDERSON
KATHERINE T. LYDON
MATTHEW THUESEN
Assistant United States Attorneys

/s/ Alexandre Dempsey
ALEXANDRE DEMPSEY
Trial Attorney, Public Integrity Section

PLEA AGREEMENT-DANA WILLIAMSON                    14

# EXHIBIT A

## Factual Basis for Pleas

### *Conduit Scheme (Count 1)*

In early 2022, Dana Williamson was working as a consultant, providing public affairs, lobbying, and consulting services. Sean McCluskie was the Chief of Staff to a federal public official who had previously held other federal and state positions, Public Official 1.

McCluskie repeatedly sought the assistance of Williamson in funneling money from Public Official 1's dormant state campaign account to McCluskie via text message, phone calls, and in-person meetings. Thereafter, from approximately February 2022 through September 2024, Williamson assisted McCluskie in stealing money from his boss's dormant state campaign account. Williamson did this by billing the campaign account for consulting services. She then passed the money through her company's bank account to an account controlled by Greg Campbell. The money was then paid into an account controlled by McCluskie, disguised as payment for work purportedly done by McCluskie's spouse. In fact, McCluskie's spouse had a no-show job and the purpose of the payments was to funnel money to McCluskie.

When Williamson became Chief of Staff to a California elected official in approximately December 2022, she recruited and arranged for Co-Conspirator 2 to take over her role billing the campaign account and serving as a conduit for the money. Williamson remained involved, however, communicating and meeting with co-conspirators on several occasions in 2023 and 2024 in furtherance of the scheme and its cover-up.

In furtherance of the fraud, Williamson and her coconspirators intentionally made, and caused to be made, numerous material false statements. These false statements included, but were not limited to, false statements to McCluskie's boss about the reasonableness and purpose of the charges made to the dormant campaign account and to Lawyer 1 and Law Firm 1 about the payments being for consulting services. They also provided false information about the payments to Law Firm 1 that led Law Firm 1 to file false and misleading campaign financial disclosures and provide false information to the media, thereby delaying detection of the scheme.

During the latter part of the conduit scheme, Williamson was also facing a civil investigation related to her business's PPP loan forgiveness. On the afternoon of July 29, 2024, Williamson met with Campbell and Co-Conspirator 2 at a restaurant and bar near the California State Capitol. Williamson ran through a list of issues of common interest to the three conspirators, including wrapping up the conduit scheme in a way less likely to lead to it being discovered, and the three agreed on various courses of action. The FBI recorded the conversation.

One of the other issues Williamson raised related to the ongoing Small Business Administration and U.S. Attorney's Office civil investigation of her PPP loans and a pending FIRREA subpoena for records related to her company's eligibility for PPP loans, loan forgiveness, and its revenue from lobbying activity. Williamson told her co-conspirators, "I'm still in this like fucking, my PPP loan got popped bullshit," and as a result, she needed to get a copy of her contracts with individuals such as Co-Conspirator 2 and Campbell. Williamson asked Campbell to create backdated contracts that "say that [Campbell] w[as] sub-contracting with [her] to provide general advice, umm, to [his] clients, there was no lobbying or anything like that." Campbell agreed and facilitated the creation of falsely backdated contracts that Williamson later picked up from his office.

Each of the banks and credit unions where money from the conduit scheme was held or deposited, including those where the dormant campaign funds were held, were financial institutions as defined in 18 U.S.C. § 20. Interstate wire transmissions were also used in furtherance of the fraud, including text messages, wire transfers, and emails.

PLEA AGREEMENT                    A-1

In total, the conspirators stole $225,000 in campaign funds

*False Tax Returns (Count 22)*

On or about July 16, 2024, Williamson willfully subscribed, under the penalty of perjury, to a false U.S. Individual Income Tax Return, Form 1040, for the 2023 tax year. At the end of 2022 and the very beginning of 2023, Williamson had wound down her business operations because she was working in the Governor's Office. Despite knowing that her business was not operating that year, Williamson made personal purchases through business accounts and claimed approximately $697,043 in false business deductions. This included purported wages for family members of $105,769 and $118,154, as well as expenses at home goods, veterinary services, landscaping/nursery, and other retailers. Her returns also deducted expenses such as medical expenses in Las Vegas, car payments, car washes, streaming service subscriptions, and travel.

In prior years, Williamson had also filed tax returns that included false deductions based on spending for items such as food delivery services, luxury vacations to Mexico (twice) and Santa Barbara, private jet travel, and other non-deductible personal expenses. Williamson used a corporate credit card for many of these purchases, despite knowing that such purchases were not deductible business expenses.

From 2021 to 2023, Williamson claimed a total of approximately $1,718,277 in improper business deductions, resulting in a tax loss of approximately $504,523.

*False Statements (Count 23)*

On November 14, 2024, FBI Special Agents interviewed Dana Williamson in Sacramento, California. The interview was an investigative step in multi-year public corruption and fraud investigations related to the California Capitol. Prior to the interview, Williamson was advised that the interview was voluntary and that it was a crime to lie to federal agents. During the interview, however, Williamson willfully made material false statements.

Contrary to Williamson's claims to the FBI, there was a connection between the payments to McCluskie's spouse and the campaign payments to Williamson as described above. Likewise, Williamson had, in a recorded conversation and in text messages, told Campbell what information to put in the backdated contracts. Williamson's claims that she had not talked to Co-Conspirator 2 about McCluskie, his spouse, or Public Official 1, were also false as demonstrated by a recorded conversation of Williamson made only two days prior to the FBI interview.

Williamson further claimed to the FBI that she had not passed California State government information to her former partners regarding her former client. In fact, Williamson passed confidential litigation and other information to Co-Conspirator 2 on a number of occasions, and, in a June 2024 wiretap, Williamson had been recorded strategizing with Co-Conspirator 2 how to avoid responding to a Public Records Act request related to the state's litigation against that client.

These statements were material in that they were designed to lead the FBI away from Williamson's criminal activity, by concealing the nature of the conduit scheme, denying the backdating of contracts, and hiding Williamson's involvement in passing information to former clients and business partners to give them an advantage in litigation against the state.

*I, Dana Williamson, have carefully reviewed the above factual basis and agree that the facts set forth within are true and accurate insofar as my own conduct is concerned.*

_5/11/24_
Date

_Dana Williamson_ (signature)
Dana Williamson

PLEA AGREEMENT                    A-2